# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JANE DOE<br><br>v.<br><br>THE ROCKET SCIENCE GROUP LLC<br>d/b/a MAILCHIMP | CASE NO.: |

## PLAINTIFF'S ORIGINAL COMPLAINT

### SUMMARY

1. Fighting sex trafficking is hard enough without U.S. tech companies helping foreign-based sex trafficking companies grow and profit from their trafficking in this country.

2. It is no longer acceptable for U.S. tech companies to turn profit while creating a public health and financial crisis such a sex trafficking.

3. The days of creating catastrophic harms and losses to our children and communities while hiding behind blanket erroneous immunity are over.

4. For years until it was shut down by the United States government, Backpage was the largest purveyor of sex trafficking on the internet.

5. After the U.S. Justice Department seized and shut down Backpage, foreign copycat sites immediately popped up, capitalizing on the void left in the multi-billion-dollar sex trafficking industry.

6. YesBackpage was one of those copycats who provided a new forum for sex traffickers to sell sex trafficking victims to johns across the United States.

7. MailChimp, a company based right here in Atlanta, assisted Yesbackpage in carrying on Backpage's legacy by targeting traffickers and their victims, something Yesbackpage would never have been able to do without MailChimp's assistance.

8. MailChimp made available its marketing resources and expertise to YesBackpage that enabled traffickers to begin where they left off with Backpage:

---------- Forwarded message ----------
From: YESbackpage <sales@yesbackpage.com>
Date: Tue, Jul 3, 2018, 11:36 AM
Subject: recover your money from backpage!
To:

**When backpage was siezed, it hurt us all.**

Almost every advertiser that paid to place ads on backpage.com had some sort of money in their account when it was closed.

For some, that was a buck or two, for others, it was hundreds and even thousands of dollars.

yesbackpage.com has launched, and now has over 50k ads placed. traffic is growing daily, and our users are getting quality calls from good clients.

We want to help those hurt by the closing of backpage.

9. MailChimp by and through the use of their specialized services directly facilitated the trafficking of Jane Doe.

10. Jane Doe brings suit against MailChimp because of the harms and losses this tech company caused to her, and to our community.

## JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 22 U.S.C. § 1581.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because MailChimp is headquartered in this District.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

## THE PARTIES

14. Jane Doe is a natural person who is a resident and citizen of Wisconsin.

15. MailChimp is a domestic limited liability company.

16. MailChimp maintains its headquarters and principal place of business in Atlanta, Georgia. All of MailChimp's members are residents of Georgia.

17. MailChimp may be served by serving its registered agent for service of process, **Corporation Service Company, 40 Technology Parkway South, Ste. 300, Norcross, GA 30092**, or by any other method authorized by law.

## FACTS

18. In 2016, there were at least 40 million victims of human trafficking worldwide, with at least 4.8 million victims—including children—trapped in sexual exploitation. UNITED NATIONS, Global Estimates of Modern Slavery, 39 (2017), http://www.ilo.org/wcmsp5/groups/public/---dgreports/---dcomm/documents/publication/wcms_575479.pdf.

19. The National Center for Missing and Exploited Children testified to Congress in 2016 there had been an 846% increase from 2010 to 2015 in reports of suspected child-sex trafficking, an increase the organization found to be "directly correlated to the increased use of the internet to sell children for sex." Testimony of Yiota G. Souras, Senior Vice President and General Counsel, National Center for Missing and Exploited Children, before S. Permanent Subcomm. on Investigations, at 2 (Nov. 19, 2015).

20. The internet has transformed the commercial sex trade, particularly by increasing ready access, proliferating online advertising, and providing instant connections.

21. On April 6, 2018, President Trump signed into law the Stop Enabling Sex-Trafficking Act (SESTA), S. 1693 – 115th Congress.

22. The same day SESTA passed, April 6, 2018, the FBI seized Backpage's website and arrested its founders and owners:



23. What Backpage had been doing was no secret. In August 2011, 41 state governors wrote an open letter to Backpage, publicly referring to Backpage as a "hub of human trafficking, especially the trafficking of minors."

24. Attorney General Jeff Sessions proclaimed, "For far too long, Backpage.com exists as the dominant marketplace for illicit commercial sex, a place where sex traffickers frequently advertised children and adults alike. But this

illegality stops right now." Press Release, U.S. Dept. of Justice, Justice Department Leads Effort to Seize Backpage.Com, the Internet's Leading Forum for Prostitution Ads, and Obtains 93-Count Federal Indictment (Apr. 9, 2018), https://www.justice.gov/opa/pr/justice-department-leads-effort-seize-backpagecom-internet-s-leading-forum-prostitution-ads.

25. The passing of SESTA and the seizure of Backpage sent shockwaves through the tech community.

26. The seizure of Backpage was significant and international news.

27. In the next few days, major technology companies like Craigslist and Tumblr made announcements concerning the removal of adult content from their products in light of SESTA.

28. Yet, despite the public outcry and condemnation of actions, MailChimp chose to go the other way and assist YesBackpage in its sex trafficking venture.

29. With Backpage shut down, YesBackpage quickly popped up as an alternative for sex traffickers to post their victims for sale.

30. YesBackpage openly boasts that it is a replacement for Backpage.

31. YesBackpage functions the same way that Backpage did and by declaration through MailChimp communications specifically used Backpage data.

32. YesBackpage also offers sex acts for sale by sex trafficking victims.

33. YesBackpage knowingly facilitates sex trafficking.

34. YesBackpage needed marketing resources and ability to reach sex traffickers.

35. Without the ability to reach sex traffickers, YesBackpage would not be able to supply victims to post for sale for sex on its website.

36. MailChimp allows persons and businesses to use its talent, resources, technology and services to market and communicate.

37. YesBackpage used Mail Chimp technology to enable efficient and targeted communication between itself and sex traffickers.

38. MailChimp was thereby an active party in the process of soliciting and fulfilling acts of sex trafficking.

39. MailChimp's integrated communications software was used together to track postings of illegal advertisements, encourage greater use of these advertisements by traffickers, and effectively promote sex trafficking on an unprecedented scale.

40. MailChimp was the key technology used to unify the various digital components of the sex trafficking transaction, including the use of email to increase more advertising, more consumption of those ads, and thereby facilitate more sex trafficking.

41. Armed with knowledge of activity occurring through YesBackpage, MailChimp sent email campaigns directly from its servers to existing and potential YesBackpage customers—that is, sex traffickers.

42. After sending the email campaigns, MailChimp monitored the e-mails to see if they were opened or not, and to gain other information from the recipients.

43. YesBackpage contracted with MailChimp to advertise sex for sale on YesBackpage's website.

44. YesBackpage paid money to MailChimp for its licenses, outbound communications, and other assistance.

45. YesBackpage contracted with MailChimp to advertise for users to post sex for sale on YesBackpage's website.

46. MailChimp took YesBackpage's money to distribute advertisements for persons to use the YesBackpage website to post sex for sale.

47. Jane Doe was sex trafficked on YesBackpage as a result of YesBackpage's messages on MailChimp's platform.



48. MailChimp's branding was proudly displayed on this and other emails sent by MailChimp:



49. MailChimp collected a variety of information from contacts who received the emails.

50. The information collected by MailChimp included, in MailChimp's own words:[1]

> - **Device information**: We collect information about the device and applications you use to access the Services, such as your IP address, your operating system, your browser ID, and other information about your system and connection.
> - **Log data**: Our web servers keep log files that record data each time a device accesses those servers and those log files contain data about the nature of each access, including originating IP addresses. We may also access metadata and other information associated with files that you upload into our Services.
> - **Product usage data**: We collect usage data about you whenever you interact with our Services, which may include the dates and times you access the Services and your browsing activities (such as what portions of the Services are used). We also collect information regarding the performance of the Services, including metrics related to the deliverability of emails and other communications you send through the Services. This information allows us to improve the content and operation of the Services, and facilitate research and analysis of the Services.

51. MailChimp then used this data "for a range of reasons, including" for data analytics, for sale or sharing with third-party partners, and for remarketing. *Id.*

52. For example, MailChimp's marketing and remarketing efforts included:[2]

---

[1] MailChimp, Privacy Policy, https://mailchimp.com/legal/privacy/ (last accessed Nov. 25, 2019).
[2] *Id.*

> - **To provide suggestions to you.** This includes adding features that compare Members' email campaigns, using data to suggest other publishers your Contacts may be interested in, or using data to suggest products or services that you may be interested in or that may be relevant to you or your Contacts. Some of these suggestions are generated by use of our data analytics projects, which are described below. For more information about our use of cookies and other tracking technologies for this purpose, and instructions about how to opt out of having data collected through the use of cookies, please see our Cookie Statement **here**.

53. In this manner, MailChimp used and profited from the contacts provided by YesBackpage or sourced by MailChimp in furtherance of its business relationship with YesBackpage.

54. Jane Doe is one of MailChimp's sex trafficking victims.

55. MailChimp knowingly facilitated the sex trafficking of Jane Doe.

56. MailChimp's marketing relationship with YesBackpage makes it responsible for its natural consequences—the sex trafficking of Jane Doe.

## FIRST CAUSE OF ACTION—SEX TRAFFICKING

57. Jane Doe incorporates all other allegations.

58. At all relevant times, Jane Doe was and is a victim within the meaning of 18 U.S.C. § 1595(a).

59. At all relevant times, Jane Doe was and is a victim within the meaning of 18 U.S.C. § 1595(a).

60. At all relevant times, MailChimp was and is a perpetrator within the meaning of 18 U.S.C. § 1595(a).

61. MailChimp benefitted, by receiving financial and other compensation, through its participation in a venture involving the illegal posting of advertisements for sex trafficking, including the sex trafficking of children. 18 U.S.C. §§ 1590(a), 1591(a)(2), 1593A.

62. MailChimp knew or should have known it was participating in a venture involving the illegal posting of advertisements for sex trafficking, including the sex trafficking of children, in violation of the TVPRA, 18 U.S.C. § 1581, et seq.

63. MailChimp's TVPRA violations were a direct, producing, and proximate cause of the injuries and damages to Jane Doe.

## SECOND CAUSE OF ACTION—NEGLIGENCE

64. Jane Doe incorporates all other allegations.

65. MailChimp had a duty to the general public and to persons made subject to its marketing platform, including Jane Doe, to take reasonable steps to protect them from the foreseeable dangers of their marketing automation platform.

66. MailChimp failed to exercise ordinary care as would a reasonably prudent person under the same circumstances.

67. MailChimp was also negligent in one or more of the following, non-exclusive particulars:

   a. Failure to stop online posting of Jane Doe and other human or sex trafficking victims;

   b. Allowing, permitting, and encouraging the posting for sexual exploitation of Jane Doe and other human and sex trafficking victims; and

   c. Allowing, permitting, and encouraging the sexual exploitation minor children, including Jane Doe.

68. MailChimp's negligent actions proximately caused legal injuries to Jane Doe.

69. Each of MailChimp's negligent acts and omissions, singularly or collectively, constituted negligence and proximately caused legal injuries to Jane Doe.

### THIRD CAUSE OF ACTION—NEGLIGENCE PER SE

70. Jane Doe incorporates all other allegations.

71. MailChimp's acts and omissions violated various provisions of federal law, including the TVPRA, 18 U.S.C. § 1581, et seq.

72. MailChimp's failure to comply with the standard of care set forth in these laws constitutes negligence per se.

73. Each of MailChimp's negligent acts and omissions, singularly or collectively, constituted negligence per se and proximately caused legal injuries to Jane Doe.

### FOURTH CAUSE OF ACTION—GROSS NEGLIGENCE

74. Jane Doe incorporates all other allegations.

75. MailChimp's acts and omissions constitute gross neglect.

76. Viewed objectively from the standpoint of MailChimp at the time of the incidents, MailChimp's acts and omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Jane Doe.

77. MailChimp nevertheless evidenced conscious indifference to the rights, safety, or welfare of others, including Jane Doe.

78. As a result of MailChimp's gross neglect, Jane Doe was exposed to and did sustain serious and grievous personal injury.

79. Each of MailChimp's negligent acts and omissions, singularly or collectively, constituted gross negligence and proximately caused legal injuries to Jane Doe.

80. Exemplary damages are warranted for MailChimp's gross negligence.

### FIFTH CAUSE OF ACTION—AIDING AND ABETTING

81. Jane Doe incorporates all other allegations.

82. MailChimp intentionally aided and abetted, by assisting and participating with, and by assisting or encouraging each other to commit the tortious result—including, but not limited to, violation of the TVPRA, 18 U.S.C. § 1581, et seq., negligence, and gross negligence.

83. MailChimp intentionally aided and abetted, by assisting and participating with, or by encouraging, YesBackpage and/or Jane Doe's trafficker, in the commitment of the tortious acts.

84. MailChimp's tortious acts to assist or encourage these violations against Jane Doe, when viewed individually and separate and apart from each other and Jane Doe's trafficker, were a breach of duty to Jane Doe and a substantial factor in causing the tortious activity against her.

85. MailChimp (a) had knowledge that YesBackpage and/or Jane Doe's trafficker's conduct constituted a tort, (b) had the intent to assist YesBackpage and/or Jane Doe's trafficker in committing a tort, (c) gave YesBackpage and/or Jane Doe's trafficker assistance or encouragement, and (d) constituted a substantial factor in causing the torts committed by YesBackpage and/or Jane Doe's trafficker.

86. With respect to assisting and participating with YesBackpage and/or Jane Doe's trafficker's tortious conduct (a) MailChimp provided substantial assistance to YesBackpage and/or Jane Doe's trafficker in accomplishing the

tortious result; (b) MailChimp's own conduct, separate from YesBackpage and/or Jane Doe's trafficker's conduct, was a breach of duty to Jane Doe; and (c) MailChimp's participation was a substantial factor in causing the tortious result.

87. As a result of MailChimp's aiding and abetting, Jane Doe was exposed to and did sustain serious and grievous personal injury.

88. Each of MailChimp's negligent acts and omissions, singularly or collectively, constituted gross negligence and proximately caused legal injuries to Jane Doe.

## DAMAGES

89. MailChimp's acts and omissions, individually and collectively, caused Jane Doe to sustain legal damages.

90. Jane Doe is entitled to be compensated for personal injuries and economic damages, including:

    a.    Actual damages;

    b.    Direct damages;

    c.    Incidental and consequential damages;

    d.    Mental anguish and emotional distress damages (until trial and in the future);

    e.    Restitution;

    f.    Unjust enrichment; and

      g.    Penalties.

91.    Jane Doe is entitled to exemplary damages.

92.    Jane Doe is entitled to treble damages.

93.    Jane Doe is entitled to recover attorneys' fees and costs of court.

94.    Jane Doe is entitled to pre- and post-judgment interest at the maximum legal rates.

95.    A constructive trust should be imposed on MailChimp and the Court should sequester any benefits or money wrongfully received by MailChimp for the benefit of Jane Doe.

## JURY DEMAND

96.    Jane Doe demands a jury trial on all issues.

## RELIEF SOUGHT

97.    Wherefore, Jane Doe respectfully requests judgment against Defendants for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, attorney fees, and all other relief, at law or in equity, to which she may be justly entitled.

        Respectfully submitted,

        ANDERSEN, TATE & CARR, P.C.

        /S/ PATRICK J. MCDONOUGH
        Patrick J. McDonough
        Georgia State Bar No. 489855
        pmcdonough@atclawfirm.com
        Jonathan S. Tonge
        Georgia State Bar No. 303999
        jtonge@atclawfirm.com
        Attorneys for Plaintiff

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

        ANNIE MCADAMS, PC, LEAD COUNSEL

        Annie McAdams
        annie@mcadamspc.com
        Texas Bar No. 24051014
        (pending pro hac)
        ANNIE MCADAMS, PC
        1150 Bissonnet
        Houston, Texas 77005
        (713) 785-6262
        (866) 713-6141 (fax)

        Michael T. Gallagher
        mike@gld-law.com
        Texas Bar No. 07586000
        (pending pro hac)
        Pamela McLemore
        pamm@gld-law.com
        Texas Bar No. 24099711
        (pending pro hac)

Boyd Smith
Texas Bar No. 18638400
(pending pro hac)
THE GALLAGHER LAW FIRM
2905 Sackett Street
Houston, Texas 77098
(713) 222-8080
(713) 222-0066 (fax)

David E. Harris
dharris@shhlaw.com
Texas Bar No. 24049273
(pending pro hac)
Jason Hoelscher
Texas Bar No. 24010671
(pending pro hac)
Louie J. Cook
lcook@shhlaw.com
Texas Bar No. 24101191
(pending pro hac)
Jeffrey H. Richter
jrichter@shhlaw.com
Texas Bar No. 24061614
(pending pro hac)
SICO HOELSCHER HARRIS LLP
802 N. Carancahua, Ste. 900
Corpus Christi, Texas 98401
(361) 653-3300
(361) 653-3333 (fax)

Attorneys for Jane Doe

3656614_1