**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JANE DOE | |
| v. | CASE NO.: 1:19-cv-05393-WMR |
| THE ROCKET SCIENCE GROUP LLC d/b/a MAILCHIMP | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

### SUMMARY

1.      It is no longer acceptable for U.S. tech companies to turn profits while creating a public health and financial crisis such a sex trafficking.

2.      The days of creating catastrophic harms and losses to our children and communities while hiding behind blanket erroneous immunity are over.

3.      For years, until it was shut down by the United States government, Backpage was the largest purveyor of sex trafficking on the internet.

4.      After the U.S. Justice Department seized and shut down Backpage, foreign copycat sites immediately popped up, capitalizing on the void left in the multi-billion-dollar sex trafficking industry.

5.      YesBackpage was one of those copycats who provided a new forum for sex traffickers to sell sex trafficking victims across the United States.

6.     Mailchimp, a company based right here in Atlanta, enabled YesBackpage to carry on Backpage's legacy by targeting traffickers and their victims, like Jane Doe, something YesBackpage would never have been able to do without Mailchimp's assistance.

7.     YesBackpage's purpose and goal was obvious on the face.

8.     Mailchimp, by its own admission, reviews and monitors who their customers are and the business they are in order to keep their efforts safe.

9.     Mailchimp knowingly profited by providing its marketing resources and expertise to YesBackpage to enable traffickers to begin where they left off with Backpage:

10.     MailChimp further profits from YesBackpage's business by mining and selling data from YesBackpage and YesBackpage's client base.

11.     By knowingly facilitating the recruitment of business for YesBackpage, Mailchimp directly and knowingly facilitated and profited from the trafficking of Jane Doe.

12.     Jane Doe brings suit against Mailchimp because of the harms and losses this tech company caused to her.d

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 22 U.S.C. § 1581.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Mailchimp is headquartered in this District.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

## THE PARTIES

16.     Jane Doe is a natural person who is a resident and citizen of Wisconsin.

17.     Mailchimp is a domestic limited liability company.

18.     Mailchimp maintains its headquarters and principal place of business in Atlanta, Georgia. All of Mailchimp's members are residents of Georgia.

19.     Mailchimp has appeared and answered.

**FACTS**

**A. Mailchimp facilitated and profited from the sex trafficking of Jane Doe.**

20.     Jane Doe is a trafficking survivor.

21.     For the time period Backpage was taken down by the U.S. Department of Justice, Jane Doe experienced a reprieve from the abuse and exploitation she suffered from the tech sex trafficking trade.

---

From: **YESbackpage!** <sales@yesbackpage.com>
Date: Wed, Jul 18, 2018, 1:08 PM
Subject: IMPORTANT information about your yesbackpage account.
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## IMPORTANT!!

yesbackpage.com has grown in leaps and bounds. There is now over 100k ads posted by real escorts, massage professionals, and more. Traffic now exceeds 25k visitors per day, and growing.

WE HAVE MOVED! To better protect our customers, and to offer far better service, we have moved our servers from Dhaka to the Netherlands. We still hold a .com web address, (and it is still the same yesbackpage.com) but with these new servers in Denmark, your information is safer from the gov, as is the site. The new servers are MUCH faster and you will no longer see service outages.

We are starting a new campaign to bring MORE and better customers to the site, so that you our advertisers get more and better calls. We have gone from brand new to over 100k ads in just a months time! More and more people are finding the site, our search engine results improve daily, and it is all because of YOU!

Our customers (YOU) have posted ads when we had no traffic, you stuck with us through rumors and attacks from our competition.. and the results are clear!

**We want to say thank you!**

---

22.     After receiving an email on July 3, 2018 and continued targeted emails through July and August, Jane Doe's trafficker sold her for sex by force and coercion through postings on YesBackpage.com after receiving the email from Mailchimp.

23.     Jane Doe's trafficker continued to traffic her on YesBackpage throughout 2018.

24.     During this time, YesBackpage continued to contact Jane Doe and her trafficker through the use of Mailchimp's email marketing campaigns.

25.     Mailchimp knowingly facilitated the sex trafficking that foreseeably led to the trafficking of Jane Doe.

26.     Mailchimp's marketing relationship with YesBackpage makes it responsible for its natural consequences—the sex trafficking of Jane Doe.

**B. Mailchimp facilitated and profited from sex trafficking.**

27.     The internet has transformed the commercial sex trade, particularly by increasing ready access, proliferating online advertising, and providing instant connections.

28.     The National Center for Missing and Exploited Children testified to Congress in 2016 there had been an 846% increase from 2010 to 2015 in reports of suspected child-sex trafficking, an increase the organization found to be "directly correlated to the increased use of the internet to sell children for sex." Testimony of

Yiota G. Souras, Senior Vice President and General Counsel, National Center for Missing and Exploited Children, before S. Permanent Subcomm. on Investigations, at 2 (Nov. 19, 2015).

29.     In order to address the proliferation of sex trafficking online, On April 6, 2018, President Trump signed into law the Stop Enabling Sex-Trafficking Act (SESTA), S. 1693 – 115th Congress.

30.     The same day SESTA passed, April 6, 2018, the FBI seized Backpage's website and arrested its founders and owners:



31.    What Backpage had been doing was no secret. In August 2011, 41 state governors wrote an open letter to Backpage, publicly referring to Backpage as a "hub of human trafficking, especially the trafficking of minors."

32.    Attorney General Jeff Sessions proclaimed, "For far too long, Backpage.com exists as the dominant marketplace for illicit commercial sex, a place where sex traffickers frequently advertised children and adults alike. But this illegality stops right now." Press Release, U.S. Dept. of Justice, Justice Department Leads Effort to Seize Backpage.Com, the Internet's Leading Forum for Prostitution Ads, and Obtains 93-Count Federal Indictment (Apr. 9, 2018), https://www.justice.gov/opa/pr/justice-department-leads-effort-seize-backpagecom-internet-s-leading-forum-prostitution-ads.

33.    The seizure of Backpage was significant and international news.

34.    In the next few days, major technology companies like Craigslist and Tumblr made announcements concerning the removal of adult content from their products in light of SESTA.

35.    With Backpage shut down, YesBackpage, an Amsterdam company, quickly popped up as an alternative for sex traffickers to post their victims for sale.

36.     Despite the public outcry and condemnation of actions by companies like Backpage and YesBackpage, Mailchimp chose to knowingly profit from working with YesBackpage in its sex trafficking venture.

37.     Mailchimp boasts of its knowledge of its customers businesses. For example, Mailchimp bragged about traveling "68,554 miles … to meet and learn from our customers"[1] and spending "212 hours of customer research interviews."[2]  It is clear that Mailchimp takes the time to know its customer's business.

38.     A simple visit to YesBackpage's website revealed its intended purpose:

---

[1] https://mailchimp.com/annual-report/stats/miles-traveled/
[2] https://mailchimp.com/annual-report/stats/customer-research/



39.     During the time at which Mailchimp was working with YesBackpage, it was no secret YesBackpage was aiming to be the replacement for Backpage.

40.     Because Mailchimp takes time to understand its customers business, it knew (or at a minimum should have known) of the business YesBackpage was in.

41.     YesBackpage functions the same way that Backpage did and by declaration through Mailchimp communications specifically used Backpage data.

42.     Without the ability to reach sex traffickers previously posting on Backpage, YesBackpage would not be able to supply victims, like Jane Doe, to post for sale for sex on its website.

**C. Jane Doe's Sex Trafficking Claims Do not Treat Mailchimp as a Publisher or Speaker**

43.     Jane Doe is not alleging defamation claims.

44.     <u>Jane Doe is not alleging defamatory content was created or published by Mailchimp of which Mailchimp had no knowledge.</u>

45.     <u>Jane Doe is not claiming Mailchimp conducted itself as a good samaritan, but in fact the opposite.</u>

46.     <u>Mailchimp knew its platform was being used by a sex trafficking website.</u>

47.     <u>Mailchimp did not publish information about Jane Doe to third parties.</u>

**D. Mailchimp failed to act as a "Good Samaritan"**

48.     Mailchimp's "Acceptable Use Policy" specifically prohibits its use to promote illegal activity and specifically acknowledges the "higher-than-average abuse" of the sexual exploitation industry that YesBackpage was in noting "escort services" and "sexual encounter sites":[3]

---

[3] https://mailchimp.com/legal/acceptable_use/#Prohibited_Content

## Prohibited Content

Please don't use Mailchimp to distribute anything offensive, to promote anything illegal, or to harass anyone. You may not use Mailchimp to create, send, or display:

- Campaigns offering to sell illegal goods or services
- Emails that violate the CAN-SPAM or other anti-spam laws
- Pornography/sexually explicit content

Some industries have higher-than-average abuse complaints, which can jeopardize deliverability. In order to maintain the reliability of our platform, we do not allow businesses that offer these types of services, products, or content:

- Escort services, mail-order bride/spouse finders, international marriage brokers, and other similar sites and services
- Hookup, swinger, or sexual encounter sites or services

49.     In fact, Mailchimp has a separate section titled "Content Subject to Additional Scrutiny" that again specifically prohibits "sites or services with a sexual emphasis or sexually explicit content. "[4]" This is precisely the business that YesBackpage and therefore Mailchimp was in.

50.     As Mailchimp states in the policy provided to its users such as YesBackpage, they "we're in this thing together:"

---

[4] https://mailchimp.com/legal/acceptable_use/#Content_Subject_to_Additional_Scrutiny

# Acceptable Use Policy

---

In this document 

---

==We're in this thing together.== The actions individual Members take can have a big impact on our system as a whole. That's why all Mailchimp Members ==must follow this Acceptable Use Policy== in their use of Mailchimp and any other Mailchimp Add-ons or products we may offer, like Websites, Ads, Mandrill and TinyLetter. If you violate this policy, we may suspend or terminate your account. We may also suspend or terminate accounts according to our Standard Terms of Use where we see behavior, content, or other factors that pose a threat to our platform. If a term is capitalized in this Acceptable Use Policy but isn't defined, it has the meaning given to it in our Standard Terms of Use.

51.    In furtherance of Mailchimp's business, it monitors the activity of its users, such as YesBackpage to ensure compliance with its policies.[5]  Mailchimp specifically prohibits "accounts that promote or incite harm toward others or that promote discriminatory, hateful, or harassing" content.  Such prohibition applies to "an organization that has publicly stated or acknowledged that its goals, objectives, positions, or founding tenets include statements or principles that could be

---

[5] https://mailchimp.com/legal/terms/#Rules_and_Abuse

reasonably perceived to advocate, encourage, or sponsor" hateful content or a threat of physical harm."

52.   Mailchimp undertakes to reduce abuse of its services to protect its reputation.  Mailchimp also undertakes to prohibit abuse of its services by constantly collecting data from users.  Mailchimp specifically acknowledges that it collects such data to:[6]

- "…enforce compliance with our Terms of Use and applicable law. This may include developing tools and algorithms that help us prevent violations.

- To protect the rights and safety of our Members and third parties, as well as our own."

53.   Given YesBackpage's stated intent to replace Backpage, it is inconceivable that Mailchimp did not know it was facilitating sex trafficking. Furthermore, Mailchimp recognized the increased risk of abuse with sites like YesBackpage, yet it continued to accept YesBackpage's business and dollars.

54.   Mailchimp profited from its relationship with YesBackpage; therefore, Mailchimp knowingly profited from sex trafficking.

---

[6] https://mailchimp.com/legal/prior-privacy-policy/

55.     Jane Doe was sex trafficked as a direct result of a Mailchimp driven YesBackpage advertisement; therefore, Mailchimp profited from Jane Doe's sex trafficking.

56.     Mailchimp actively monitors the content of the e-mails sent by users such as YesBackpage.  For example, in its 2019 annual report, Mailchimp boasts of "63,503 emails referencing Lizzo's 'Truth Hurts' (Bom bom bi dom bi dum bum bay!)."[7]  It further boasts of "7,860 emails referencing the long-running Eurovision song competition"[8] and "10,554 joy-sparking emails referencing Marie Kondo."[9] Mailchimp even goes so far as to monitor the number of emojis contained within emails sent through its platform, noting "😍 6,476,892,004 heart eyes emoji included in the subject lines of our customers' emails 😍."[10]

57.     To be able to report such detailed statistics, Mailchimp must be able to extract and parse content of messages sent, which means they already have the means and are scanning all outgoing messages. Mailchimp should have put checks in place to detect human trafficking related content and websites, especially in light of the fact that the recognize the potential for abuse of their services by such

---

[7] https://mailchimp.com/annual-report/stats/lizzo/
[8] https://mailchimp.com/annual-report/stats/eurovision/
[9] https://mailchimp.com/annual-report/stats/marie-kondo/
[10] https://mailchimp.com/annual-report/stats/heart-eyes-emoji/

websites. Despite having the ability to do it, Mailchimp either never wrote filters for it, or they didn't care. In either circumstance, such willful disregard for abuse facilitated trafficking in such a manner that Mailchimp must be held to account for its negligence and resulting profits from sex trafficking.  Has Mailchimp exercised reasonable diligence, YesBackpage would not have been able to promote its website and Jane Doe would not have been trafficked.

58.    Mailchimp undertook a duty to ensure compliance with its policies, noting that such policies existed to protect innocent third parties. Despite the ability and responsibility to protect against abuse of its services in the manner in which YesBackpage did, Mailchimp failed to do so.

59.    A reasonable company in the same or similar position as Mailchimp would have taken the following steps to ensure compliance with the law and with its policies:

- Checking content of emails for illegal content;

- Checking outbound links from any emails built with and/or sent from Mailchimp servers for links to malicious, hazardous, or illegal websites, such as yesbackpage.com;

- Actively granting approval (with human-in-the-loop compliance verification) to companies before allowing upload or addition of contacts to ensure such contacts come from legitimate, opt-in sources with established business relationships;

- Actively granting approval (with human-in-the-loop compliance verification) for companies to broadcast email campaigns in increasing volume;

- Monitoring bounce and unsubscribe rates for email list performance and flagging such Mailchimp clients when higher than normal rates exist, indicating improper use of the emailing system;

- Monitoring unsubscribe messages and abuse-related reports either through Mailchimp's existing unsubscribe system or via emails sent directly to abuse@mailchimp.com;

- Upon receipt of payment, confirming the Mailchimp user is a legitimate company with legitimate business interest to use the email marketing platform.

60.     Mailchimp was the key technology used to unify the various digital components of the sex trafficking transaction, including the use of email to increase more advertising, more consumption of those ads, and thereby facilitate more sex trafficking.

61.     Armed with knowledge of activity occurring through YesBackpage, Mailchimp sent email campaigns directly from its servers to existing and potential YesBackpage customers—that is, known sex traffickers.

62.     After sending the email campaigns, Mailchimp monitored the e-mails to see if they were opened or not, and to gain other information from the recipients.

63.     YesBackpage contracted with Mailchimp to advertise sex for sale on YesBackpage's website.

64. YesBackpage paid money to Mailchimp for its licenses, outbound communications, and other assistance.

65. YesBackpage contracted with Mailchimp to advertise for users to post sex for sale on YesBackpage's website.

66. Mailchimp took YesBackpage's money to distribute advertisements for persons to use the YesBackpage website to illegally post sex for sale.

67. Mailchimp's branding was proudly displayed on some of the  emails sent by Mailchimp:



68. Mailchimp collected a variety of information from contacts who received the emails.

69. Some of the emails sent by Mailchimp did not include branding thus indicating a paid relationship between Mailchimp and YesBackpage.

70.    The information collected by and used for data mining and sales by Mailchimp included, in Mailchimp's own words:[11]

> - **Device information**: We collect information about the device and applications you use to access the Services, such as your IP address, your operating system, your browser ID, and other information about your system and connection.
>
> - **Log data**: Our web servers keep log files that record data each time a device accesses those servers and those log files contain data about the nature of each access, including originating IP addresses. We may also access metadata and other information associated with files that you upload into our Services.
>
> - **Product usage data**: We collect usage data about you whenever you interact with our Services, which may include the dates and times you access the Services and your browsing activities (such as what portions of the Services are used). We also collect information regarding the performance of the Services, including metrics related to the deliverability of emails and other communications you send through the Services. This information allows us to improve the content and operation of the Services, and facilitate research and analysis of the Services.

71.    Mailchimp then used this data "for a range of reasons, including" for data analytics, for sale or sharing with third-party partners, and for remarketing. *Id.*

72.    For example, Mailchimp's marketing and remarketing efforts included:[12]

---

[11] MailChimp, Privacy Policy, https://mailchimp.com/legal/privacy/ (last accessed Nov. 25, 2019).
[12] *Id.*

- **To provide suggestions to you.** This includes adding features that compare Members' email campaigns, using data to suggest other publishers your Contacts may be interested in, or using data to suggest products or services that you may be interested in or that may be relevant to you or your Contacts. Some of these suggestions are generated by use of our data analytics projects, which are described below. For more information about our use of cookies and other tracking technologies for this purpose, and instructions about how to opt out of having data collected through the use of cookies, please see our Cookie Statement **here**.

## FIRST CAUSE OF ACTION—SEX TRAFFICKING

73.     Jane Doe incorporates all other allegations.

74.     At all relevant times, Jane Doe was and is a victim within the meaning of 18 U.S.C. § 1595(a).

75.     At all relevant times, Mailchimp knowingly benefitted both financially and by receiving something of value from participation in a venture which Mailchimp knew or should have known was engaged in an act in violation of 18 U.S.C. §§ 1590(a), 1591(a)(2), 1593A.

76.     Mailchimp knew or should have known it was participating in a venture involving the illegal posting of advertisements for sex trafficking, including the sex trafficking of children, in violation of the TVPRA, 18 U.S.C. § 1581, et seq.

77.     Mailchimp's TVPRA violations were a direct, producing, and proximate cause of the injuries and damages to Jane Doe.

## SECOND CAUSE OF ACTION—NEGLIGENCE

78.   Jane Doe incorporates all other allegations.

79.   Mailchimp had a duty to the general public and to persons made subject to its marketing platform, including Jane Doe, to take reasonable steps to protect them from the foreseeable dangers of their services.

80.   Mailchimp failed to exercise ordinary care as would a reasonably prudent person under the same circumstances.

81.   Mailchimp was also negligent in one or more of the following, non-exclusive particulars:

   a.   Failing to stop online posting of Jane Doe and other human or sex trafficking victims;

   b.   Allowing, permitting, and encouraging the posting for sexual exploitation of Jane Doe and other human and sex trafficking victims; and

   c.   Allowing, permitting, and encouraging the sexual exploitation minor children, including Jane Doe;

   d.   Failing to check the content of emails for illegal content;

   e.   Failing to check outbound links from any emails built with and/or sent from Mailchimp servers for links to malicious, hazardous, or illegal websites, such as yesbackpage.com;

   f.   Failing to actively grant approval (with human-in-the-loop compliance verification) to companies before allowing upload or addition of contacts to ensure such contacts come from legitimate, opt-in sources with established business relationships;

- 20 -

g.      Failing to actively grant approval (with human-in-the-loop compliance verification) for companies to broadcast email campaigns in increasing volume;

h.      Failing to monitor bounce and unsubscribe rates for email list performance and flagging such Mailchimp clients when higher than normal rates exist, indicating improper use of the emailing system;

i.      Failing to monitor unsubscribe messages and abuse-related reports either through Mailchimp's existing unsubscribe system or via emails sent directly to abuse@mailchimp.com; and

j.      Upon receipt of payment, failing to confirm the Mailchimp user – here YesBackpage – was a legitimate company with legitimate business interest to use the email marketing platform.

82.     Mailchimp's negligent actions proximately caused legal injuries to Jane Doe.

83.     Each of Mailchimp's negligent acts and omissions, singularly or collectively, constituted negligence and proximately caused legal injuries to Jane Doe.

### THIRD CAUSE OF ACTION—NEGLIGENCE PER SE

84.     Jane Doe incorporates all other allegations.

85.     Mailchimp's acts and omissions violated various provisions of federal law, including the TVPRA, 18 U.S.C. § 1581, et seq.

86.     Mailchimp's failure to comply with the standard of care set forth in these laws constitutes negligence per se.

87.     Each of Mailchimp's negligent acts and omissions, singularly or collectively, constituted negligence per se and proximately caused legal injuries to Jane Doe.

## FOURTH CAUSE OF ACTION—GROSS NEGLIGENCE

88.     Jane Doe incorporates all other allegations.

89.     Mailchimp's acts and omissions constitute gross neglect.

90.     Viewed objectively from the standpoint of Mailchimp at the time of the incidents, Mailchimp's acts and omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Jane Doe.

91.     Mailchimp nevertheless evidenced conscious indifference to the rights, safety, or welfare of others, including Jane Doe.

92.     As a result of Mailchimp's gross neglect, Jane Doe was exposed to and did sustain serious and grievous personal injury.

93.     Each of Mailchimp's negligent acts and omissions, singularly or collectively, constituted gross negligence and proximately caused legal injuries to Jane Doe.

94.     Exemplary damages are warranted for Mailchimp's gross negligence.

## FIFTH CAUSE OF ACTION—AIDING AND ABETTING

95.     Jane Doe incorporates all other allegations.

96.    Mailchimp intentionally aided and abetted, by assisting and participating with, and by assisting or encouraging each other to commit the tortious result—including, but not limited to, violation of the TVPRA, 18 U.S.C. § 1581, et seq., negligence, and gross negligence.

97.    Mailchimp intentionally aided and abetted, by assisting and participating with, or by encouraging, YesBackpage and/or Jane Doe's trafficker, in the commitment of the tortious acts.

98.    Mailchimp's tortious acts to assist or encourage these violations against Jane Doe, when viewed individually and separate and apart from each other and Jane Doe's trafficker, were a breach of duty to Jane Doe and a substantial factor in causing the tortious activity against her.

99.    Mailchimp (a) had knowledge that YesBackpage and/or Jane Doe's trafficker's conduct constituted a tort, (b) had the intent to assist YesBackpage and/or Jane Doe's trafficker in committing a tort, (c) gave YesBackpage and/or Jane Doe's trafficker assistance or encouragement, and (d) constituted a substantial factor in causing the torts committed by YesBackpage and/or Jane Doe's trafficker.

100.   With respect to assisting and participating with YesBackpage and/or Jane Doe's trafficker's tortious conduct (a) Mailchimp provided substantial assistance to YesBackpage and/or Jane Doe's trafficker in accomplishing the

tortious result; (b) Mailchimp's own conduct, separate from YesBackpage and/or Jane Doe's trafficker's conduct, was a breach of duty to Jane Doe; and (c) Mailchimp's participation was a substantial factor in causing the tortious result.

101.   As a result of Mailchimp's aiding and abetting, Jane Doe was exposed to and did sustain serious and grievous personal injury.

102.   Each of Mailchimp's negligent acts and omissions, singularly or collectively, constituted gross negligence and proximately caused legal injuries to Jane Doe.

## DAMAGES

103.   Mailchimp's acts and omissions, individually and collectively, caused Jane Doe to sustain legal damages.

Jane Doe is entitled to be compensated for personal injuries and economic damages, including:

      a.      Actual damages;

      b.      Direct damages;

      c.      Incidental and consequential damages;

      d.      Mental anguish and emotional distress damages (until trial and in the future);

      e.      Restitution;

      f.      Unjust enrichment; and

       g.     Penalties.

104.   Jane Doe is entitled to exemplary damages.

105.   Jane Doe is entitled to treble damages.

106.   Jane Doe is entitled to recover attorneys' fees and costs of court.

107.   Jane Doe is entitled to pre- and post-judgment interest at the maximum legal rates.

108.   A constructive trust should be imposed on Mailchimp and the Court should sequester any benefits or money wrongfully received by Mailchimp for the benefit of Jane Doe.

## JURY DEMAND

109.   Jane Doe demands a jury trial on all issues.

## RELIEF SOUGHT

110.   Wherefore, Jane Doe respectfully requests judgment against Defendants for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, attorney fees, and all other relief, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

*/s/ David E. Harris*
David E. Harris
dharris@shhlaw.com
Texas Bar No. 24049273
*(admitted pro hac vice)*
Jason Hoelscher
jhoelscher@shhlaw.com
Texas Bar No. 24010671
*(admitted pro hac vice)*
Jeffrey H. Richter
jrichter@shhlaw.com
Texas Bar No. 24061614
*(admitted pro hac vice)*

SICO HOELSCHER HARRIS LLP
802 N. Carancahua, Ste. 900
Corpus Christi, Texas 78401
(361) 653-3300
(361) 653-3333 (fax)

ANNIE MCADAMS, PC, LEAD COUNSEL
Annie McAdams
annie@mcadamspc.com
Texas Bar No. 24051014
*(admitted pro hac vice)*
ANNIE MCADAMS, PC
1150 Bissonnet
Houston, Texas 77005
(713) 785-6262
(866) 713-6141 (fax)

Patrick J. McDonough
Georgia State Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia State Bar No. 303999

jonge@atclawfirm.com
Attorneys for Plaintiff
ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 400
Duluth, Georgia 30097
(770) 822-0999
(770) 822-9680 (fax)

Michael T. Gallagher
mike@gld-law.com
Texas Bar No. 07586000
*(admitted pro hac vice)*
Pamela McLemore
pamm@gld-law.com
Texas Bar No. 24099711
*(admitted pro hac vice)*
Boyd Smith
bsmith@gld-law.com
Texas Bar No. 18638400
*(admitted pro hac vice)*
THE GALLAGHER LAW FIRM
2905 Sackett Street
Houston, Texas 77098
(713) 222-8080
(713) 222-0066 (fax)

Attorneys for Jane Doe

## **CERTIFIATE OF SERVICE**

I hereby certify a true and correct copy of the foregoing Plaintiff's First Amended Complaint was electronically filed through the CM/ECF system to all parties through their counsel of records this 24th day of February, 2020.

/s/ David E. Harris
David E. Harris